UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HIGHGROUND, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1815** |
| | **12-2642** |
| **CAROLYN WILLIAMS ALONZO AND CHARLES PAUL ALONZO, JR.** | **SECTION: "S" (2)** |

**OPINION**

Highground, Inc., David Hallin and Ronda Hyatt appeal the bankruptcy court's dismissal of their adversary complaints against the debtors, Charles Paul Alonzo, Jr. and Carolyn Williams Alonzo. In their adversary complaints, the appellants contend that the debtors committed fraud, and seek to have a debt allegedly owed to them excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A), and to prevent the debtors' discharge in bankruptcy pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A).[1] Hallin and Highground also appeal the bankruptcy court's order granting them $25,000 in attorneys' fees, arguing that the bankruptcy court improperly applied a percentage formula to calculate the award, and that they should be awarded the full amount of attorneys' fees and costs that they claim, $350,393.05 in attorneys' fees and $16,193.02 in costs.

For the reasons set forth, the bankruptcy court's decisions dismissing the adversary complaints and awarding $25,000 in attorneys' fees to Hallin and Highground are **AFFIRMED**.

---

[1] In their adversary complaints, the appellants argued that the debtors were unjustly enriched, that a debt allegedly owed to them by the debtors should be excepted from discharge under 11 U.S.C. §§ 523(a)(4) and 523(a)(6), and that the debtors should be prevented from attaining discharge in bankruptcy under 11 U.S.C. § 727(a)(2)(B). The appellants do not challenge the bankruptcy court's dismissal of those claims. However, for the first time, the appellants argue in this appeal that the debtors should be prevented from attaining discharge in bankruptcy under 11 U.S.C. §§ 727(a)(3), 727(a)(5), 727(a)(6) and 727(a)(7). Because an issue not properly presented to the bankruptcy court cannot be raised for the first time on appeal, this court will not consider those arguments. See In re OCA, Inc., 522 F.3d 413, 424 (5th Cir. 2008).

**BACKGROUND**

Charles Paul Alonzo, Jr. and Carolyn Williams Alonzo are co-debtors in a Chapter 7 bankruptcy case pending before the United States Bankruptcy Court for the Eastern District of Louisiana. The Alonzos are also the defendants in the related adversary proceedings 10-1042 and 10-1043 filed by the appellants. The appellants argue that the Alonzos should not be permitted discharge in bankruptcy and that an individual debt allegedly owed to them should not be dischargeable in bankruptcy. Hallin and Highground also argue that the bankruptcy court abused its discretion in awarding them $25,000 in attorneys' fees instead of the full amount they requested.

In 1997, the Alonzos formed Phoenix Associates Land Syndicate, Inc., which is a publicly traded company with approximately 2000 shareholders. Phoenix Associates purchased distressed businesses with various combinations of cash and preferred stock in Phoenix Associates or other entities. Phoenix Associates acquired twenty-six companies, but the business failed, leaving Phoenix Associates with several million dollars of accrued debt. As a result, Phoenix Associates filed for relief under Chapter 11 of the United States Bankruptcy Code on June 10, 2009, in the United States Bankruptcy Court for the Eastern District of Louisiana.

The Alonzos and Ronald Lee Blackburn were the majority stockholders in Phoenix Associates. The Alonzos were officers and directors of Phoenix Associates, but Blackburn was not. In August 2007, the Alonzos and Blackburn incorporated Phoenix Oil & Gas, Inc. to conduct a business deal that never materialized. Because Phoenix Oil & Gas was a dormant entity, the Alonzos allowed Blackburn to use it for his own purposes. Then, in October 2008, the Alonzos and Blackburn organized Tri-Koon Holdings, LLC in Florida. Charles Alonzo withdrew from Tri-Koon

almost immediately because of his involvement in a civil trial in the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana. Sometime thereafter, Carolyn Alonzo donated her interest in Tri-Koon to Blackburn.

In 2006, Hallin and Hyatt formed Treaty Petroleum, Inc., and they were its officers and directors. The sole asset of Treaty Petroleum was an oil lease in Texas known as the W. W. Owens leasehold. The W. W. Owens leasehold was operated by Highground, Inc., a Texas corporation owned by Hyatt and her husband. The W. W. Owens leasehold had four oil wells, and from November 2007 through April 2008, those wells were not producing.

In May 2008, Phoenix Associates entered into negotiations for the purchase of Treaty Petroleum. Phoenix Associates's board of directors declined the deal, and the Alonzos indicated that they did not want to be involved in a transaction with Treaty Petroleum. Blackburn proceeded with the transaction, representing himself to be Phoenix Associates's Chief Operations Officer. On May 16, 2008, Blackburn signed an Agreement to Purchase Treaty Petroleum on behalf of Phoenix Associates. The agreement specified that Treaty Petroleum's shareholders, including the appellants, were to receive preferred stock in Phoenix Associates in exchange for their shares of Treaty Petroleum.

Also, on May 16, 2008, Blackburn executed a promissory note in favor of Hallin in the amount of $45,000, and two promissory notes in favor of Highground, one in the amount of $59,950, and the other in the amount of $150,000. Blackburn signed all of the promissory notes as Chief Operating Officer of Phoenix Associates. The note in favor of Hallin specified that it would be "construed and enforced in accordance with, and be governed by, the laws of the State of Tennessee," and the notes in favor of Highground stated that they would be "construed and enforced

3

in accordance with, and be governed by, the laws of the State of Texas." All three notes contained the following attorneys' fees provision:

> **Attorneys' Fees**. If this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings at law or in equity or in bankruptcy, receivership or other court proceedings, Maker agrees to pay all costs of collection including, but not limited to, court costs and reasonable attorney's fees.

On July 25, 2008, Blackburn signed a Purchase Agreement on behalf of Phoenix Oil & Gas for the purchase of Treaty Petroleum, and Treaty Petroleum's shareholders were issued shares of Phoenix Oil & Gas. Carolyn Alonzo prepared the stock certificates. When Hallin told Carolyn Alonzo that the stock certificates should have read "Phoenix Associates" instead of "Phoenix Oil & Gas," she said that it was her mistake, and did not inform him that Phoenix Associates was not the purchaser of Treaty Petroleum.

When the appellants complained to Blackburn about receiving Phoenix Oil & Gas stock instead of Phoenix Associates stock, Blackburn told them that Phoenix Oil & Gas was a wholly owned subsidiary of Phoenix Associates, and that Phoenix Associates preferred to structure the purchase this way instead of what was specified in the Purchase Agreement. Blackburn's statements were untrue. Blackburn did not have authority from Phoenix Associates to purchase Treaty Petroleum, and Phoenix Oil & Gas had no direct connection with Phoenix Associates, but rather was owned by Blackburn.

After gaining control of Treaty Petroleum, Blackburn merged it with Alternate Energy Corporation to form Treaty Energy Corporation. Thereafter, the appellants were offered the chance to convert their Phoenix Oil & Gas stock into Treaty Energy stock, which they did. A few weeks

before the bankruptcy court's trial of the adversary proceedings commenced, the appellants collectively Treaty Energy stock that had a value of $3,822,000.

On June 10, 2009, Phoenix Associates filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana. On January 22, 2010, the Alonzos filed a personal Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana. Thereafter, the appellants filed Adversary Proceeding number 10-1043 against the Alonzos objecting to the discharge of a debt allegedly owned to them under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6), and the discharge of the Alonzos' debts generally under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B) and 727(a)(4)(A). The appellants also removed a suit filed on November 10, 2009, in the Twenty-Second Judicial District Court, Parish of St. Tammany, State of Louisiana against the Alonzos, Blackburn, Tri-Koon Holdings, Phoenix Oil & Gas, and Treaty Energy, alleging breach of contract, fraud, and unjust enrichment, seeking $15,000,000 in damages and to collect on the promissory notes. The defendants to the state court action filed counterclaims for fraudulent misrepresentation.

The bankruptcy court consolidated Adversary Proceedings 10-1042 and 10-1043 for trial. After six days of trial, the bankruptcy court dismissed the appellants' claims brought under 11 U.S.C. §§ 523(a)(4), 523(a)(6) and 727(a)(2)(B) from the bench,[2] and ordered further memoranda on the remaining claims. The bankruptcy court specifically ordered Highground, Hallin and Hyatt to state specific facts, rather than vague references, to support their claims.

On May 29, 2012, the bankruptcy court issued a Memorandum Opinion addressing the claims remaining in adversary proceedings 10-1042 and 10-1043. The bankruptcy court found that

---

[2] The appellants have not appealed these rulings.

Blackburn committed fraud in connection with the purchase of Treaty Petroleum because he misrepresented that he was acting on behalf of Phoenix Associates and Phoenix Associates's relationship with Phoenix Oil & Gas. The bankruptcy court also found that Carolyn Alonzo committed fraud by failing to inform Hallin that Phoenix Associates did not issue the stock because it was not the purchaser of Treaty Petroleum. The bankruptcy court found that there was not enough evidence that Charles Alonzo had an intent to deceive because there was "some question as to whether he actually participated in any board meetings, and there is no evidence that he actually received any meeting minutes of the Treaty Petroleum board meetings while he served as a member." Also, the court found no evidence that Charles Alonzo knew of Blackburn's fraudulent activities.

The bankruptcy court found that Hallin and Highground suffered a loss with respect to the three May 16, 2008, promissory notes signed by Blackburn. The court found that Blackburn was personally liable for those notes under the laws of Texas and Tennessee.[3] The court dismissed the counterclaim for fraudulent misrepresentation.[4]

However, the bankruptcy court found that the appellants did not suffer any loss as a result of receiving Phoenix Oil & Gas stock instead of Phoenix Associates stock. The court reasoned that because the appellants converted their Phoenix Oil & Gas stock to Treaty Energy stock that had a value, the failure to issue Phoenix Associates's stock with no value was not detrimental.

Further, the bankruptcy court found that the appellants did not demonstrate that they suffered a loss as a result of Blackburn's refusal to finance operations on the W. W. Owens leasehold because

---

[3] The notes specified that the law of Texas or Tennessee would apply to actions involving them.

[4] Had Blackburn prevailed on that claim, the notes would have been rendered null.

it was barely producing at the time of the Treaty Petroleum sale, and Treaty Petroleum was in danger of losing the leasehold. The bankruptcy court found it more likely than not that the lease would have been lost regardless of Blackburn's actions. The bankruptcy court noted that the appellants did not have any expert testify as to the lease's value and there were no documents introduced to demonstrate its value. Because the bankruptcy court did not find that the Alonzos owed a debt toH Hallin, Highground and Hyatt, it found that there was no debt for which to deny discharge under § 523(a)(2)(A).

The bankruptcy court also found that denying the Alonzos discharge generally under § 727(a)(2)(A) was not justified because there was no evidence that the Alonzos transferred their interest in Tri-Koon to Blackburn with the intent to hinder, delay or defraud a creditor or officer of the estate. Rather the evidence showed that Alonzos transferred Tri-Koon to Blackburn for use in a transaction when it had no value, well before Blackburn transferred Treaty Energy stock to Tri-Koon on December 24, 2008. The bankruptcy court found no evidence that the Alonzos retained possession of Tri-Koon or benefitted from Blackburn's use of Tri-Koon in the Treaty Energy transaction.

Further, the bankruptcy court found that denying the Alonzos discharge generally under § 727(a)(2)(A) was not justified because the Alonzos' statements that Hallin, Highground and Hyatt alleged were false were not made knowingly with the intent to mislead. The appellants allege that the Alonzos made false statements under oath at the meetings of creditors. Specifically, on February 18, 2010, Charles Alonzo testified that there was never any stock issued in Phoenix Oil & Gas, but later in that meeting he conceded that it was possible that some stock was issued. Also, on February 18, 2010, Carolyn Alonzo testified that she could not remember whether or not Phoenix

Oil & Gas stock was issued, but that it was possible.  Further, Carolyn Alonzo testified on March 4, 2010, that Phoenix Oil & Gas never issued any stock certificates, but the appellants point out that she and Charles Alonzo signed stock certificates issued by Phoenix Oil & Gas.

The Alonzos admitted that they made these statements under oath.  However, the bankruptcy court found that the statements were not made knowingly with the intent to mislead.  The bankruptcy court noted that while the statements are seemingly contradictory, they are not necessarily false and the appellants did not prove that the Alonzos knew that the statements were false when they made them nor that the Alonzos made the statements with fraudulent intent.  The bankruptcy court stated that the appellants' "broad, vague and general reference[s]" to the sequence of events implying fraudulent intent "does not satisfy the burden of proving that the Alonzos knew the statement[s] w[ere] false," nor does it "satisfy the [appellants'] burden of proving the Alonzos' specific intent to defraud."

On September 24, 2012, the bankruptcy court awarded Hallin and Highground $25,000 in attorneys's fees for their successful prosecution of their claims against Blackburn for breach of contract regarding the promissory notes.  The bankruptcy court specified that attorneys' fees would only be awarded for time spent litigating issues concerning the promissory notes.  The bankruptcy court reasoned that the claims on the promissory notes were not inextricably intertwined with the appellants other claims because they could have sued Blackburn on the notes without involving all of the other claims against the Alonzos.  The bankruptcy court found that only three pages of the transcript for the six-day trial related directly to the notes.  The bankruptcy court found that Hallin and Highground's attorney's hourly rate of $285 was reasonable, and stated that if ten hours were

allotted, the fee would be $2,850. The bankruptcy court found that this amount was too low, and awarded $25,000.

## DISCUSSION

### A. Standard of review

District courts of the United States have jurisdiction to hear appeals from orders of the bankruptcy court. See 28 U.S.C. § 158(a). "[C]onclusions of law are reviewed *de novo*, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed *de novo*." In re Nat'l Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000). Attorneys' fees awards are reviewed for abuse of discretion. In re ASARCO, L.L.C., - - - F.3d - - -, 2012 WL 6119756, *4 (5th Cir. 2012).

### C. 11 U.S.C. § 523(a)(2)(A)

Title 11, United States Code, Section 523(a)(2)(A), provides that a debt obtained by "false pretenses, a false representation, or actual fraud" is not dischargeable in bankruptcy. A party claiming that a debt is not dischargeable must prove that: (1) the debtor made representations; (2) at the time the representations were made, the debtor knew that they were false; (3) the debtor made the representations with the intent and purpose to deceive the creditor; (4) the creditor relied on such representations; and, (5) the creditor sustained losses as a proximate result of the representations. In re Quinlivan, 434 F.3d 314, 317 (5th Cir. 2005).

In this case, the bankruptcy court found that the Alonzos did not owe Hallin, Highground and Hyatt a debt. The bankruptcy court found that Blackburn was personally liable on the promissory notes, but that the Alonzos were not involved with those notes. The bankruptcy court also found that Hallin, Highground and Hyatt did not suffer any loss as a result of receiving Phoenix Oil & Gas stock or as a result of Blackburn's failure to develop the W. W. Owens leasehold. In this appeal,

appellants have not offered arguments or pointed to any evidence which demonstrate that they suffered losses as a result of receiving Phoenix Oil & Gas stock, or as a result of Blackburn's failure to develop the W. W. Owens leasehold. However, they argue that Carolyn Alonzo should be held liable for the promissory notes because the bankruptcy court found that she committed fraud, and she was Blackburn's partner.

Louisiana Civil Code article 2801 defines a partnership as "a juridical person, distinct form its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit." If there is no written partnership agreement, the existence of a partnership may be established by proof that the alleged partners agreed to: (1) form a partnership and participate in the profits to accrue from the business in determined proportions; (2) share in the losses as well as the profits of the partnership; and (3) to have the property or stock of the partnership form a community of goods in which the party has a proprietary interest. Lang v. Sproull, 36 So.3d 407, 412 (La. Ct. App. 2010). "Essentially, the parties must intend to have a business relationship between them and that relationship must have all the major characteristics of a partnership." Id. at 413.

The appellants contend that the Alonzo's and Blackburn were partners because they worked together in their business endeavors and because Carolyn Alonzo referred to Blackburn as their "partner" numerous times during her testimony. However, there is no evidence that the Alonzos and Blackburn were partners under Louisiana law. There is no written partnership agreement, and no proof that they intended to have a business relationship with the major characteristics of a partnership. Instead, the Alonzos and Blackburn conducted their business dealings through corporations and limited liability companies. Therefore, there is no basis upon which to hold

Carolyn Alonzo liable for Blackburn's debt on the promissory notes under a partnership theory, nor have the appellants proved that the Alonzos owed them any other debt, as noted by the bankruptcy court. Therefore, the bankruptcy court's decision dismissing the appellants claim under §523(a)(2)(A) is AFFIRMED.

**D.  11 U.S.C. § 727(a)(2)(A)**

Under 11 U.S.C. § 727(a)(2)(A), a debtor cannot be discharged in bankruptcy if the debtor transferred his or her property within one year before the filing of the bankruptcy petition "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property." A party seeking to prevent a debtor's discharge in bankruptcy under §727(a)(2)(A) must prove that: (1) there was a transfer of property; (2) the property belonged to the debtor; (3) the transfer occurred within one year of the filing of the bankruptcy petition; and, (4) the debtor acted with the intent to hinder, delay or defraud a creditor or officer of the estate. Pavy v. Castant, 873 F.2d 89, 90 (5th Cir. 1989).

There must be actual intent to defraud which may be inferred from the debtor's actions and proved by circumstantial evidence. In re Pratt, 411 F.3d 561, 565 (5th Cir. 2005). The factors that demonstrate actual intent to defraud are: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and, (6) the general chronology of the events and transactions under inquiry. Id.

11

The bankruptcy court found that the Alonzos transferred their interest in Tri-Koon to Blackburn, but that it was questionable as to whether it occurred within one year of the date on which the Alonzos filed their Chapter 7 petition for bankruptcy relief.  However, the bankruptcy court noted that it was irrelevant that it could not fix a definite date to the transfer because the appellants did not prove that the Alonzos made the transfer with the intent to hinder, delay or defraud a creditor or officer of the estate.  The bankruptcy court found that the appellants vague references to the sequence of events was not sufficient to prove the Alonzos' actual intent.  Further, the court found that there was no evidence that Alonzos received a benefit from Tri-Koon's holding of Treaty Energy stock.

On appeal, Hallin, Highground and Hyatt argue that the close friendship of between the Alonzos and Blackburn and the "sequence of events" demonstrate the intent to defraud.  The bankruptcy court considered these factors in light of all of the evidence and determined that the appellants did not prove that the Alonzos had the actual intent to defraud.  The appellants are challenging the bankruptcy court's finding of fact, which this court reviews for clear error.  Nat'l Gypsum, 208 F.3d at 504.  The appellants have not demonstrated that the bankruptcy court committed clear error and only make vague references to the sequence of events, rather than pointing to specific facts.  Therefore, the bankruptcy court's decision dismissing the appellants claim under §727(a)(2)(A) is AFFIRMED.

**E.   11 U.S.C. § 727(a)(4)(A)**

Pursuant to 11 U.S.C. § 727(a)(4)(A), a debtor cannot be discharged in bankruptcy if the debtor knowingly and fraudulently made a false oath or account in or in connection with the case. A party seeking to prevent a debtor's discharge under §727(a)(4)(A) must prove that: (1) the debtor

made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false when it was made; (4) the debtor made the statement with fraudulent intent; and, (5) the statement related materially to the bankruptcy case. In re Beaubouef, 966 F.2d 174, 178 (5th Cir. 1992); In re Duncan, 562 F.3d 688, 695 (5th Cir. 2009).

Hallin, Highground and Hyatt argue that bankruptcy court erred in finding that the statements the Alonzos made that the meetings of creditors on February 18, 2010 and March 4, 2010 were not made with the intent to defraud. The appellants are challenging the bankruptcy court's finding of fact, which this court reviews for clear error. Nat'l Gypsum, 208 F.3d at 504. The appellants have not demonstrated that the bankruptcy court committed clear error regarding the Alonzos intent in making the statements and only make vague references to the sequence of events, rather than pointing to specific facts. Therefore, the bankruptcy court's decision dismissing the appellants claim under §727(a)(4)(A) is AFFIRMED.[5]

## F. Attorneys' Fees

Hallin and Highground argue that the bankruptcy court abused its discretion in awarding them $25,000 in attorneys' fees for their recovery on the promissory notes. They argue that the bankruptcy court improperly applied a percentage formula to calculate the award rather than considering the factors applied by courts in Texas and Tennessee for calculating reasonable attorneys' fees. They also argue that all of the claims involved in the litigation were so inextricably intertwined that they should be awarded all of the attorneys' fees they claim, $350,393.05 in attorneys' fees and $16,193.02 in costs.

---

[5] In their memoranda, the appellants argue that the Alonzos failed to disclose financial information related to Treaty Energy and a lawsuit in Tennessee to the bankruptcy trustee. These were not issues addressed in the bankruptcy court and will not be considered by this court for the first time on appeal. See OCA, Inc., 522 F.3d at 424.

The promissory notes in this case provide for the recovery of "reasonable attorney's fees" incurred in connection with the collection of the notes. Under Texas and Tennessee law, when determining the reasonableness of attorneys' fees, a factfinder should consider:

> (1) the time and labor required, the novelty and difficulty of the question involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04); Wright v. Wright, 337 S.W.3d 166, 176-77 (Tenn. 2011) (citing TENN. SUP. CT. R. 8, RPC 1.5). Additionally, under Tennessee law the factfinder must also consider:

> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10) whether the fee agreement is in writing.

Wright, 337 S.W.3d at 177 (citing TENN. SUP. CT. R. 8, RPC 1.5).

Texas and Tennessee courts apply the "American Rule" to the recovery of attorneys' fees. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 310-11 (Tex. 2007); Fannon v. City of Lafollette, 329 S.W.3d 418, 432 (Tenn. 2010). The "American Rule" is that attorneys' fees are not recoverable unless authorized by statute or contract. Id. at 310; Fannon, 329 S.W.3d at 432. Thus, the fee claimant "is required to show that [the attorneys'] fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." Id. at 311.

However, under Texas law, a fee claimant is excepted from the duty to segregate attorneys' fees between claims for which they are recoverable and those for which they are not when the claims arise out of the same transaction and are "so interrelated that their prosecution or defense entails proof or denial of essentially the same facts."[6] Id. (internal quotations and citations omitted). Thus, "when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are intwined to the point of being inseparable, the party suing for attorney's fees may recover the entire amount covering all claims." Id. (internal quotations and citations omitted).

A common set of underlying facts does not necessarily make all claims involved in a suit "inseparable" and all legal fees recoverable, because the claims may involve different research, discovery, proof, or legal expertise. Id. at 313. Instead, "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." Id. at 313-314.

---

[6] This court is not cited any case wherein a Tennessee court recognizes a similar exception to the "American Rule." Under Tennessee law an attorneys' fees claimant must always segregate attorneys' fees between claims for which they are recoverable and those for which they are not.

Thus, "[i]f any attorneys' fees relate solely to a claim for which such fees are unrecoverable, the claimant must segregate recoverable from unrecoverable fees." Penhollow Custom Homes, LLC v. Kim, 320 S.W.3d 366, 374 (Tex. Ct. App. 2010) (citing Tony Gullo Motors, 212 S.W.3d at 313). However, the segregation of attorneys' fees does not require attorneys to keep separate time records for recoverable and non-recoverable items. Id. (citing Tony Gullo Motors, 212 S.W.3d at 314). Rather, the amount of recoverable attorneys' fees is sufficiently segregated if the attorney testifies that a certain percentage of the fees would have been necessary even if the claim for which attorneys' fees are not recoverable had not been asserted. Id. (citing Tony Gullo Motors, 212 S.W.3d at 314). Whether attorneys' fees for certain claims must be segregated is a question of law, but the extent to which the claims can be segregated is a mixed question of law and fact. Id. (citing Tony Gullo Motors, 212 S.W.3d at 312-13).

In this case, the bankruptcy judge found that Hallin and Highground were entitled to reasonable attorneys' fees for their successful prosecution of their breach of contract claims pertaining to the notes. The bankruptcy court examined all of the claims brought by appellants in this litigation, and while recognizing that they involved the same underlying background facts, found that Hallin and Highground could have sued Blackburn for the enforcement of the promissory notes independently of the appellants' claims against the Alonzos regarding their discharge in bankruptcy. Indeed, whether Blackburn was liable on the promissory notes under the state law of contracts and fraud is wholly distinct from the issue of whether the Alonzos should be afforded discharge in bankruptcy under Chapter 11 of the United States Bankruptcy Code. Therefore, the bankruptcy court correctly determined that Hallin and Highground could only recover attorneys' fees for hours reasonably spent on litigating claims related to the promissory notes.

16

The bankruptcy court examined the reasonableness of Hallin and Highground's attorney's hourly rate, and found that $285 per hour is reasonable rate for similar services in the area. The bankruptcy court considered the very small portion of the six day trial that was spent discussing the notes, i.e. three pages of the 1,211 page transcript, but also noted that the attorney should not be limited to the "short, short amount of time actually spent in the trial on the notes themselves, because . . . he must have done some preparatory work, and some research, and other kinds of things in connection with the notes" which needed to be considered. The bankruptcy court determined that allotting ten hours to the promissory notes would result in a fee of $2,850, which would be insufficient, and determined that $25,000 would be fair and reasonable to both sides in light of the result obtained. The bankruptcy court's consideration of fairness to both sides and the tangential nature of Hallin and Highground's claims against Blackburn regarding the promissory notes to their claims against the Alonzos regarding their discharge in bankruptcy demonstrates that the bankruptcy court considered relevant factors and awarded a reasonable attorneys' fee. Therefore, the bankruptcy court's award of $25,000 in attorneys' fees to Hallin and Highground is AFFIRMED.[7]

## CONCLUSION

For the reasons set forth, the bankruptcy court's decisions dismissing the adversary complaints, finding Blackburn liable on the promissory notes, and awarding $25,000 in attorneys' fees to Hallin and Highground are **AFFIRMED**.

---

[7] Hallin and Highground raise the issue of costs for the first time in this appeal. Therefore, that issue will not be considered by this court. See OCA, Inc., 522 F.3d at 424. Also, Blackburn argues that Hallin and Highground should not be awarded attorneys' fees because it was not properly pleaded in their complaint. However, the bankruptcy court considered this argument and found that the pleading was sufficient. Blackburn did not appeal that ruling, therefore this court will not consider that argument.

New Orleans, Louisiana, this __6th__ day of February, 2013.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**